# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

DOUG CONLEY,               )
                                          )
        Plaintiff,          )
                                          )      **Civil Action No. 2:17-cv-00056**
        v.                   )      **Judge Crenshaw / Frensley**
                                          )
NANCY BERRYHILL,        )
**Acting Commissioner of Social Security,**    )
                                          )
        Defendant.       )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's "Motion for Judgment on the Pleadings and Administrative Record." Docket No. 14. Plaintiff has filed an accompanying Memorandum of Law. Docket No. 14-1. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 15. Plaintiff has filed a Reply. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's "Motion for Judgment on the Pleadings and Administrative Record" be GRANTED, and that the decision of the Commissioner be REMANDED.

# I. INTRODUCTION

Plaintiff protectively filed his application for Disability Insurance Benefits ("DIB") on October 10, 2013, alleging that he had been disabled since September 28, 2013, due to chronic obstructive pulmonary disease ("COPD"), "stomach issues," and "staff infections." *See, e.g.,* Docket No. 14-1, Attachment ("TR"), pp. 67, 76. Plaintiff's application was denied both initially (TR 76) and upon reconsideration (TR 88). Plaintiff subsequently requested (TR 102-03) and received (TR 29-49) a hearing. Plaintiff's first hearing was conducted on February 17, 2016 by Administrative Law Judge ("ALJ") K. Dickson Grissom. TR 29. Plaintiff and vocational expert ("VE"), JoAnn Bullard, appeared and testified. *Id.* Because there were outstanding records at the time of the first hearing, a second hearing was conducted on August 10, 2016, again by ALJ Grissom. TR 50-56. Plaintiff and VE Susan E. Thomas appeared and testified at the second hearing. *Id.*

On September 29, 2016, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 15-23. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2. The claimant has not engaged in substantial gainful activity since September 28, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairments: coronary artery disease, chronic obstructive pulmonary disease (COPD), gastroesophageal reflux disease (GERD), and migraine headaches (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination

of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except that he is limited to no more than frequent pushing and pulling bilaterally with his upper extremities; he is precluded from any climbing of ladders, ropes, and scaffolds; he is limited to no more than frequent balancing, stooping, kneeling, couching, or crawling; he is precluded from exposure to extreme heat, wetness, humidity, pulmonary irritants, electric shock, unprotected heights, and hazards; and he should avoid concentrated exposure to excessive noise, but he could be exposed to moderate noise intensity.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on September 16, 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in
        the Social Security Act, from September 28, 2013, through
        the date of this decision (20 CFR 404.1520(g)).

TR 17-22.

On September 29, 2016, Plaintiff timely filed a request for review of the hearing decision.

TR 176. On August 2, 2017, the Appeals Council issued a letter declining to review the case (TR

1-7), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil

action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the

Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of record. Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369

(6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence

exists in the record to support the Commissioner's decision, and (2) whether any legal errors

were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human

Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept

as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir.

1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell

v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.*,

305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner

if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different

conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion

reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the

Commissioner did not consider the record as a whole, however, the Commissioner's conclusion

is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985),

*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence:

(1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of

medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age,

education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving

his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not

only includes previous work performed by Plaintiff, but also, considering Plaintiff's age,

education, and work experience, any other relevant work that exists in the national economy in

significant numbers regardless of whether such work exists in the immediate area in which

Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.

> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.*, 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to show that his evaluation of the medical opinion evidence is supported by substantial evidence; (2) failed to show that his evaluation of other relevant medical evidence is supported by substantial evidence; and (3) failed to adequately explain why Plaintiff's cardiac issues do not meet a listing. Docket No. 14-1. Accordingly,

Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. ALJ's Analysis of the Medical Opinion Evidence

Plaintiff contends that the ALJ erred in according little weight to the opinion of consultative examiner ("CE") Dr. Terrence Leveck and great weight to the opinion of non-examining medical consultant Dr. Edwin Cruz. Docket No. 14-1. Specifically, Plaintiff argues that "both these determinations were erroneous, as the ALJ failed to sufficiently explain how the record supported these weight allocations." *Id.* at 12.

Plaintiff takes issue with the ALJ's determination that Dr. Leveck's finding of a

limitation to sedentary work "is not supported by the claimant's overwhelmingly normal physical exam results." *Id.*, *citing* TR 20. Specifically, Plaintiff argues that the ALJ failed to "indicate when and where these 'overwhelmingly normal' results appear within the record." *Id.* at 13, *citing* TR 20. Plaintiff submits that "the record overwhelmingly supports that someone with significant cardiac and pulmonary problems would likely be relegated to sedentary work . . . ." *Id.* Plaintiff cites a range of medical records from 2013 to 2016 related to observations of, and treatments for, Plaintiff's impairments. *Id.* at 13-14. Plaintiff concludes that, based on these "abnormal results," the record fails to support the ALJ's determination that Dr. Leveck's limitation "is not supported by the claimant's overwhelmingly normal physical exam results." *Id.* at 14.

Plaintiff further contends that "the ALJ did not discuss in any sort of detail how Dr. Cruz's opinion was supported by, or consistent with, the medical record as a whole; nor did he appear to consider Dr. Cruz's specialization, or the lack of a treating relationship." *Id.* at 15. Plaintiff argues that "Dr. Cruz incorrectly summarizes Plaintiff's pre/post-bypass cardiac issues" because he did "not discuss Plaintiff's stress test that revealed ischemia," did not discuss nurse practitioner Nancy Sibley's "notes that document consistently high blood pressure," and did not appropriately assess Plaintiff's ejection fraction. *Id.* Plaintiff asserts that "Dr. Cruz does not account for Plaintiff's post-bypass 'heart attack'[2] in April 2016 . . ." because he likely did not

---

[2] The parties dispute whether Plaintiff actually suffered a heart attack after his coronary artery bypass surgery. TR 2106-07; Docket No. 14-1 at 15; Docket No. 15 at 12. Because the dispositive question is whether the ALJ considered this event in evaluating Dr. Cruz's opinion and the record as a whole, and not whether Plaintiff suffered a heart attack during this event, this issue is inapposite to the disposition of the case. The undersigned hereafter refers to this event as the "post-bypass heart attack."

have Plaintiff's April 2016 medical records. *Id.* Plaintiff notes that the ALJ failed to discuss that Dr. Cruz does not specialize in cardiology. *Id.* at 16. Additionally, Plaintiff maintains that "Dr. Cruz's opinion is somewhat contradictory with itself, particular [*sic*] his opinion on Plaintiff's limitation regarding his ability to sit, walk, and stand." *Id.*

Plaintiff concludes that, in light of "these apparent issues with Dr. Cruz's opinion[,] the wholly unfounded and misleading reasons the ALJ gives for discounting Dr. Leveek's [*sic*] opinion[,] and the lack of any type of meaningful analysis or explanation within the ALJ's decision," the ALJ's weight accordations are not supported by substantial evidence. *Id.* at 17.

Defendant responds that the ALJ properly evaluated the medical opinions of Dr. Leveck and Dr. Cruz. Docket No. 15. Defendant notes that the ALJ found Dr. Leveck's "limitation to sedentary work was not supported by the overwhelmingly normal physical examination results" (*Id.* at 5, *citing* TR 20), from which Defendant argues that "the ALJ was referencing the examination results summarized in the prior paragraph, which the ALJ found included normal gait, station, and full grip strength" (*Id.*, *citing* TR 20). Defendant submits that "[t]he ALJ properly pointed out that Dr. Leveck's examination findings did not support the opinion" because Dr. Leveck "opined that Plaintiff had essentially sedentary restrictions, but the examination results were generally fairly normal apart from minimally diminished grip sensation in one hand." *Id.* at 8. Defendant maintains that, while "Plaintiff presents other evidence in the record which he argues would have supported an alternative finding," this is not the proper analysis because "the ALJ's findings were reasonable and supported by the record . . . ," and "[w]hen the ALJ's findings are reasonable, courts will not second guess." *Id.*

Defendant argues that the ALJ properly evaluated the medical opinion of Dr. Cruz

because Plaintiff's stress test revealing ischemia and high blood pressure is "not a conflict, as the mere presence of these conditions does not support any different limitations in functioning than those provided by Dr. Cruz." *Id.* at 10. Defendant submits that Plaintiff's examination with nurse practitioner Sibley, in which he was assessed with high blood pressure, does not support greater functional limitations. *Id.* Defendant asserts that Dr. Cruz appropriately considered Plaintiff's ejection fraction. *Id.* Defendant maintains that Plaintiff's ejection fraction of 35% at the time of his bypass surgery "is not particularly relevant, as the doctor [Dr. Cruz] agreed that Plaintiff probably could not work for three months after surgery," and that prior to the time Plaintiff was discharged from the hospital, "he actually had an ejection fraction of 65% as mentioned by Dr. Cruz." *Id.* at 11. Defendant notes that Dr. Cruz "also mentioned one other test was 74 percent," and further points out that Dr. Cruz's "statement that there were ejections fractions of 65% and 74% is consistent with the evidence." *Id.*

Defendant maintains that because "the record does not support that he [Plaintiff] actually had a heart attack," Plaintiff's argument that Dr. Cruz did not consider his post-bypass "heart attack" is undermined. *Id.* at 12. Defendant notes that none of the documentation related to Plaintiff's post-bypass hospitalization indicates Plaintiff had a heart attack. *Id.* Defendant also argues that Dr. Cruz is a specialist (although not a cardiologist), that his opinion is not due less weight just because he is not a cardiologist, and that Social Security Administration ["SSA"] regulations "do not confine a doctor to opine on matters only within their specialities." *Id.* at 13. Additionally, Defendant argues that the ALJ did not err in failing to include all of Dr. Cruz's limitations in Plaintiff's residual functional capacity ("RFC") because "the ALJ is not required to adopt the entirety of a medical opinion, even if it was given significant weight." *Id.* at 13-14.

11

Plaintiff replies that "[t]he ALJ's conclusory statement dismissing Dr. Levek's [*sic*] opinion did not follow the ascribed rules and regulations, nor did he properly consider the evidence that weighed against his determination." Docket No. 16 at 1-2. Plaintiff asserts that "contrary to Defendant's arguments, Plaintiff's analysis showing abnormal exam findings is entirely proper, as the ALJ was required to weigh Dr. Levek's [*sic*] opinion against the record as a whole." *Id.* at 2. Plaintiff argues that the ALJ failed to weigh the medical opinion evidence "under the regulatory factors of supportability, consistency, and specialization." *Id.* Plaintiff reiterates his argument that "the ALJ did not explain how Dr. Cruz's opinion was consistent with the record, nor did he discuss the other required factors including supportability and specialization." *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical

and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion . . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 CFR § 404.1527(d); *Allen*, 561 F.3d at 646; *Wilson*, 378 F.3d 541, 544 (6th Cir. 2004). There is no requirement that the ALJ must specifically and comprehensively articulate exactly which pieces of evidence he accepts and/or rejects, and the Regulations do not so require. Rather, the Regulations simply require that the ALJ state "the findings of fact and the reasons for the decision." 20 CFR § 416.1453(a). As the Sixth Circuit has

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

noted, "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).

Further, the Court reviews an ALJ's decision under a deferential "zone of choice" standard where the ALJ may make a decision "without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Id.*

The ALJ discussed the medical evidence as follows:

> In October 2013, the claimant was hospitalized for a fainting episode caused by severe abdominal pain. Computed tomography (CT) of his abdomen revealed non-specific bowel gas. He was stabilized and released. (See Exhibit 1F).

> Since January 2014, the claimant has received basic medical care, including medication management, at his local county health department. (See Exhibits 4F and 16F).

> In January 2015, the claimant was hospitalized for two days for nausea and vomiting. He was stabilized with medication and hydration and released. (See Exhibit 5F).

> In February and April 2015, the claimant sought emergency treatment for chest pain, headache, and dizziness due to uncontrolled hypertension. He was stabilized and released on both occasions. (See Exhibit 5F).

> In July 2015, the claimant was hospitalized for 11 days due to chest pain and dehydration. He underwent cardiac catheterization and cardiopulmonary bypass following stabilization of his acute symptoms. He also underwent endoscopic vein harvest of the left leg, and a triple bypass of his coronary artery. His ejection fraction remained unchanged at 65%, and his other symptoms were reduced to mild severity. (See Exhibits 6F, 7F, 8F, 15F, and 18F).

> In November 2015, the claimant reported increased blood pressure levels in the evenings. His dosage of Lisinopril was increased. (See Exhibit 17F).

In December 2015, the claimant sought emergency treatment for a migraine headache. He was stabilized and released. (See Exhibit 14F).

In February and April 2016, the claimant sought emergency treatment for nausea and vomiting. He was stabilized and discharged. (See Exhibits 14F and 15F).

TR 19.

The ALJ addressed the weight he accorded each medical opinion as follows:

The undersigned has considered the opinions provided by both medically acceptable sources and other sources (20 CFR 416.902 and 416.913(d)). This opinion evidence was analyzed in accordance with the regulations and agency rulings (20 CFR 416.927, and SSRs 96-2p and 96-6p). *In evaluating medical opinions, the undersigned has granted weight according to the appropriate factors, which included the following: the type of relationship (e.g., treating, non-treating, and non-examining) between the claimant and an acceptable medical source; the degree to which an opinion was supported by an explanation and relevant evidence, particularly medical signs and laboratory findings; and the consistency of the opinion with the record as a whole* (SSR 06-03p).

Edwin Cruz, M.D., provided a medical response to interrogatories on May 1, 2016. Dr. Cruz opined that the claimant is limited to medium work with no climbing of ladders, ropes, or scaffolds, but frequent/continuous ability to perform other postural activities, no exposure to heights, humidity, pulmonary irritants, or heat, no operation of a motor vehicle, and occasional exposure to cold. Dr. Cruz opined that the claimant does not meet a listing for any of his ailments, and though he was temporarily disabled for three months following his coronary artery revascularization, he is fully employable at this time. (See Exhibit 13F).

*The undersigned assigns great weight to Dr. Cruz's opinion, as it is supported by his own meticulous examination of the claimant's medical records, and the additional medical records as a whole, as discussed in detail earlier in this decision*. (See Exhibits 13F and 18F).

Consultative physician, Terrence Leveck, M.D., examined the claimant on December 23, 2013. During the examination, the claimant had clear breath sounds, regular heart rhythm, normal mental status, normal gait, normal station, and full grip strength. Dr. Leveck opined that the claimant is limited to sedentary work. (See Exhibit 2F).

*The undersigned assigns little weight to Dr. Leveck's opinion, as a limitation to sedentary work is not supported by the claimant's overwhelmingly normal physical exam results.* (See Exhibit 2F).

State agency physicians, Celia Gulbenk, M.D., and Karla Montague-Brown, M.D., reviewed the claimant's file on April 7, and July 22, 2014, respectively. Both opined that the claimant's only limitation is that he should avoid all exposure to hazards. (See Exhibits 1A and 3A).

*The undersigned assigns partial weight to these opinions, as the claimant's respiratory and cardiac ailments do prevent him from being exposed to hazards, but he is also limited to medium exertional level, per the medical records in the file, as discussed in detail earlier in this decision.* (See Exhibits 4F and 18F).

TR 19-20 (emphasis added).

The ALJ explained:

First, while the claimant had a period of temporary disability due to his cardiac procedures in July 2015, he has recovered without additional need for extended hospitalizations or with additional permanent medical restrictions. (See Exhibits 6F, 7F, 13F, and 18F).

Second, despite being advised to quit smoking cigarettes on multiple occasions by his various medical providers, the claimant has yet to do so. (See Exhibits 4F, 18F, and Hearing Testimony).

Third, the claimant's FEV1 levels are well-above listing levels. (See Exhibits 2F and 13F).

Finally, multiple practitioners who have rendered medical opinions in this case have not determined that the claimant's impairments are at the level required to render him disabled. (See Exhibits 1A,

3A, and 13F).

> *In sum, the above residual functional capacity assessment is
> supported by the medical records as a whole in this case and by
> the undersigned's finding that the claimant's assertions are not
> entirely consistent. Despite the claimant's allegations in this case,
> it is evident that his ailments fall far short of being disabling.*

TR 21 (emphasis added).

      With regard to Plaintiff's argument that the ALJ, in evaluating Dr. Leveck's opinion, failed to "indicate when and where these 'overwhelmingly normal' results appear within the record" (Docket No. 14-1 at 13, *citing* TR 20),  the ALJ expressly discussed Plaintiff's normal physical exam results in the preceding paragraph ("[T]he claimant had clear breath sounds, regular heart rhythm, normal mental status, normal gait, normal station, and full grip strength"). Although Plaintiff offers a range of records indicating "abnormal results" to support an alternative weight distribution, the ALJ's weight determination need only be supported by substantial evidence, regardless of whether the evidence could also support a different conclusion. *See Felisky*, 35 F.3d at 1035. The ALJ concluded that Dr. Leveck's opinion should be accorded little weight because it was inconsistent with the physical exam he performed, and this finding is supported by substantial evidence. The ALJ therefore appropriately accorded little weight to Dr. Leveck's opinion.

      Plaintiff additionally argues that "the ALJ did not discuss in any sort of detail how Dr. Cruz's opinion was supported by, or consistent with, the medical record as a whole; nor did he appear to consider Dr. Cruz's specialization, or the lack of a treating relationship." Docket No. 14-1 at 15. Contrary to Plaintiff's first assertion, the ALJ did discuss how Dr. Cruz's opinion related to the medical record, stating that his opinion "is supported by his [the ALJ's] own

meticulous examination of the claimant's medical record, and the additional medical records as a whole . . . ," which are quoted above.

As to the weight accorded to specialists, the Regulations state that:

> We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of speciality than to the medical opinion of a source who is not a specialist.

20 CFR § 416.927(c). *See also* 20 CFR § 404.1527(c)(5).

While the opinions of specialists are generally accorded greater weight when they are related to his/her area of speciality, nothing in the Regulations suggests that a nonspecialist is barred from providing an opinion outside their area of expertise.

With regard to the lack of a treating relationship, the ALJ stated that he weighed the medical opinion evidence "according to the appropriate factors, which included the following: *the type of relationship (e.g. treating, non-treating, and non-examining) between the claimant and an acceptable medical source . . . .*" TR 19 (emphasis added). Plaintiff has provided no evidence that Dr. Cruz was accorded weight as anything but a non-examining physician.

Plaintiff also argues that "Dr. Cruz incorrectly summarizes Plaintiff's pre/post-bypass cardiac issues" because he did not discuss Plaintiff's stress tests or nurse practitioner Sibley's treatment notes, did not appropriately assess Plaintiff's ejection fraction, and did not account for Plaintiff's post-bypass heart attack. Docket No. 14-1 at 15-16. Plaintiff further argues that Dr. Cruz's opinion is self-contradictory, particularly with regard to "his opinion on Plaintiff's limitations regarding his ability to sit, walk, and stand." *Id.* at 16. Plaintiff ultimately contends that "the ALJ did not explain how Dr. Cruz's opinion was consistent with the record, nor did he

discuss the other required factors including supportability and specialization." Docket No. 16 at 2. Plaintiff is correct that the ALJ should have considered this evidence in light of the Regulation's required factors, and Plaintiff has shown that the ALJ in the case at bar failed to do so.

There is no mention in Dr. Cruz's opinion of Plaintiff's stress tests or post-bypass heart attack, or of nurse practitioner Sibley's treatment notes. Dr. Cruz does address Plaintiff's earlier ejection fraction, but he does not mention Plaintiff's more recent April 2016 ejection fraction of 50% (TR 2100), stating only that Plaintiff "has an ejection fraction of 65-74%" (TR 2046). Dr. Cruz's opinion also appears to be internally inconsistent, as he indicates that Plaintiff is limited in his ability to sit, stand, and walk without interruption, but subsequently finds that Plaintiff could sit, stand, or walk for eight hours total in an eight hour workday. TR 2052. Because the ALJ does not mention whether he considered that Dr. Cruz failed to address this evidence or that Dr. Cruz's opinion is inconsistent with itself, it is unclear how the ALJ applied the Regulation's "supportability" (20 CFR § 404.1527(c)(3)) and "consistency" (20 CFR § 404.1527(c)(4)) factors. As a result, the undersigned cannot determine whether Dr. Cruz's opinion was accorded appropriate weight.

As discussed above, the ALJ properly accorded limited weight to the opinion of Dr. Leveck. However, the ALJ did not adequately explain his rationale for according Dr. Cruz's opinion great weight. The undersigned therefore recommends that this action be remanded.

## 2. ALJ's Analysis of Other Relevant Medical Evidence

Plaintiff contends that "the ALJ's decision is poorly reasoned and does not reflect consideration to the substantial evidence of record." Docket No. 14-1 at 17. Specifically, Plaintiff

argues that "the ALJ fails to mention an inordinate amount of relevant medical evidence," including Plaintiff's post-bypass echocardiogram, his post-bypass heart attack, his two stress tests, and his two-year treating relationship with nurse practitioner Sibley. *Id.* at 19. Plaintiff submits that "the ALJ's treatment of the evidence in this case is severely prejudicial to Plaintiff," and that "remand is required for an ALJ to provide a proper decision that sufficiently explains his reasoning, and considers all of the relevant medical evidence within the record." *Id.* at 20.

Defendant responds that the ALJ's evaluation of the record is supported by substantial evidence. Docket No. 15. Defendant notes that "[a]n ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and his opinion is supported by substantial evidence." *Id.* at 14. Defendant argues that "[t]he failure to cite all the evidence does not mean that the evidence was not considered." *Id.* Defendant submits that "[t]he ALJ documented thorough consideration of the record, and summarized the key portions of Plaintiff's treatment history. The ALJ's summary is correct and shows that the record was considered, including Plaintiff's early medical care, his inpatient admission for bypass surgery, and his subsequent treatment." *Id.* at 15-16. Defendant maintains that "Plaintiff of course had continuing care, as he had severe impairments, but Plaintiff points to no evidence of functional limitations that are at odds with the ALJ's findings." *Id.* at 17.

Plaintiff replies that "[t]he ALJ failed to discuss years' worth of medical evidence; did not even mention Plaintiff's primary care provider [nurse practitioner] Sibley or two years' worth of her treatment notes; and failed to discuss evidence of Plaintiff's more recent cardiac issues including treatment notes from cardiac specialist Dr. [Todd G.] Tolbert." Docket No. 16 at 4.

Plaintiff argues that "the ALJ's brevity in regards to the medical evidence was erroneous and not harmless, and Defendant's arguments to the contrary are unavailing." *Id.*

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387. In fact, even if the evidence could also support a different conclusion, the ALJ's decision must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key*, 109 F.3d at 273. Establishing the existence of substantial evidence does not require that the ALJ address every piece of evidence contained in the record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst*, 753 F.2d at 519, *citing Allen,* 613 F.2d at 145. Absent harmless error,[4] "[i]t is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Id.*, *citing Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984).

Plaintiff's argument centers on the ALJ's failure to mention his two-year treating relationship with nurse practitioner Sibley, as well as his post-bypass echocardiogram, heart attack, and two stress tests. The ALJ in the instant action briefly addressed nurse practitioner Sibley's care, noting that "[s]ince January 2014, the claimant has received basic medical care, including medication management, at his local county health department." TR 19. Although the ALJ did not explicitly mention the physical symptom observations contained in nurse practitioner Sibley's examination notes, including high blood pressure and other issues, Plaintiff provides no

---

[4] *See supra* note 3 and accompanying text.

evidence that her findings are inconsistent with Plaintiff's RFC. Because the ALJ's findings are consistent with nurse practitioner Sibley's examination notes, the ALJ's failure to fully address Plaintiff's treating relationship with nurse practitioner Sibley constitutes harmless error. *See Friend*, 375 F. App'x at 551.

However, a review of the remaining evidence demonstrates that remand is warranted because this evidence is relevant to the ALJ's determination, and the undersigned cannot determine whether it was properly considered. The evidence indicates that, following Plaintiff's coronary artery bypass surgery, Plaintiff's experienced a significant decrease in his ejection fraction from 74% to 50%. TR 2100, 2291. The evidence also demonstrates that Plaintiff still suffers from ischemia. TR 748, 2100. Despite these subsequent developments, the ALJ mentions only that Plaintiff's immediate post-bypass "ejection fraction remained unchanged at 65%, and his other symptoms were reduced to mild severity."

Because the undersigned cannot determine whether the ALJ appropriately considered relevant evidence and therefore cannot engage in meaningful review of the ALJ's findings, the undersigned recommends that this action be remanded.

### 3. Meeting or Equaling a Listing

Plaintiff contends that "the ALJ's analysis as to why Plaintiff's cardiac issues do not meet a Listing is absurdly conclusory and unsupported by the medical evidence." Docket No. 14-1 at 19. Specifically, Plaintiff maintains that "[t]his is evident by the ALJ's complete failure to mention either one of Plaintiff's stress tests, both of which had evidence that possibly could have meet [*sic*] a Listing." *Id.* Plaintiff argues that "because the ALJ does not even mention this evidence, this Court cannot confidently conclude that he even considered it all." *Id.*

Defendant responds that "Plaintiff must satisfy his burden of proving his disability by showing that his impairments meet or equal a listed impairment." Docket No. 15 at 16. Defendant argues that "Plaintiff makes no specific arguments as to which specific listing he met or which evidence leaves the ALJ's finding unsupported." *Id.* Defendant submits that "Dr. Cruz stated that Plaintiff did not meet the medical listings, and the ALJ gave this opinion significant weight." *Id.*

Plaintiff does not address this statement of error in his reply. Docket No. 16.

The ALJ determined that:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> The claimant's COPD does not meet listing level as his FEV1 levels of 2.82, 3.29, 3.66, and 3.72 are well-above the 1.55 required level for his height. (See Exhibits 2F and 13F).
>
> The claimant's coronary artery disease does not meet listing level as there is not angiographic evidence of the required percentage narrowing of the requisite arteries and vessels.

TR 17-18.

Because Plaintiff objects only to the ALJ's analysis of the listing requirements in relation to Plaintiff's cardiac issues, only the relevant cardiac listing for Plaintiff's severe impairment of coronary artery disease will be discussed. TR 17. With regard to Listing 4.00, "Cardiovascular System," and Listing 4.04, "Ischemic heart disease," the Code of Federal Regulations states:

> 4.00E1 *What is ischemic heart disease (IHD)*? IHD results when one or more of your coronary arteries is narrowed or obstructed or, in rare situations, constricted due to vasospasm, interfering with the normal flow of blood to your heart muscle (ischemia). The

obstruction may be the result of an embolus, a thrombus, or plaque.
When heart muscle tissue dies as a result of reduced blood supply,
it is called a myocardial infarction (heart attack).
. . .

4.04 *Ischemic Heart Disease.* With:
. . .

C. Coronary artery disease, demonstrated by angiography (obtained
independent of Social Security disability evaluation) or other
appropriate medically acceptable imaging . . .
    1. Angiographic evidence showing:
        a. 50 percent or more narrowing of a nonbypassed
        left main coronary artery; or
        b. 70 percent or more narrowing of another
        nonbypassed coronary artery; or
        c. 50 percent or more narrowing involving a long
        (greater than 1cm) segment of a nonbypassed
        coronary artery; or
        d. 50 percent of more narrowing of at least two
        nonbypassed coronary arteries; or
        e. 70 percent or more narrowing of a bypass graft
        vessel . . .

20 CFR § 404, Subpt. P, App. 1, Listings 4.00, 4.04.

In order to meet the listing for ischemic heart disease under Listing 4.04C, coronary artery

disease must be demonstrated by "angiography (obtained independent of Social Security

disability evaluation) or other appropriate medically acceptable imaging . . . ," and the imaging

must show the required narrowing of the requisite coronary arteries or vessels. 20 CFR § 404,

Subpt. P, App. 1, Listing 4.04. The ALJ correctly concluded that there is no angiographic

evidence contained in the record that would permit him to find Plaintiff's coronary artery disease

meets or medically equals the required severity in Listing 4.04C. TR 17-18.

Plaintiff's argument that the ALJ failed to mention either one of Plaintiff's stress tests is

thus unavailing in relation to the ALJ's listing determination (Docket No. 14-1 at 19), as neither

of Plaintiff's stress tests contain angiographic or other appropriate medical imaging demonstrating the required narrowing of coronary arteries or vessels (TR 748, 2100). Because the ALJ's findings were consistent with Plaintiff's stress tests, the ALJ's failure to consider them in assessing the relevant listings was therefore harmless error (*see Friend*, 375 F. App'x at 551).

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's "Motion for Judgment on the Pleadings and Administrative Record" be GRANTED, and that the decision of the Commissioner be REMANDED for further development of the record regarding the consideration of, and weight accorded to, Dr. Cruz's opinion in light of the issues discussed above, and further development of the record regarding the ALJ's consideration of the evidence related to Plaintiff's cardiac conditions.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge